# PCS SITE AGREEMENT

**Site Name: Recycling Center**

**Site I. D. #: NY33XC941C**

**1. Premises and Use.** Owner leases to Sprint Spectrum L.P., a Delaware limited partnership ("SSLP"), the site described below: [Check applicable box(es)]

☒ land consisting of approximately (2500) square feet upon which SSLP will construct its ☒ equipment base station and ☒ antenna structure;

☐ Building interior space consisting of approximately _____ square feet;

☐ Building interior space for attachment of antennas;

☐ Building exterior space for placement of base station equipment;

☐ Tower antenna space between the ___ foot and ___ foot level on the Tower;

☐ Space required for cable runs to connect PCS equipment and antennas,

in the location(s) ("Site") shown on Exhibit A, together with a non-exclusive easement for reasonable access thereto and to the appropriate, in the discretion of SSLP, source of electric and telephone facilities. The Site will be used by SSLP for the purpose of installing, removing, replacing, modifying, maintaining and operating, at its expense, a personal communications service system facility ("PCS"), including, without limitation, antenna equipment, cable wiring, back-up power sources (including generators and fuel storage tanks), related fixtures and, if applicable to the Site, an antenna structure. SSLP will use the Site in a manner which will not unreasonably disturb the occupancy of Owner's other tenants. SSLP will have access to the Site 24 hours per day, 7 days per week.

**2. Term.** The term of this Agreement (the "Initial Term") is 5 years, commencing on the date ("Commencement Date") both SSLP and Owner have executed this Agreement. This Agreement will be automatically renewed for four additional terms (each a "Renewal Term") of 5 years each, unless SSLP provides Owner notice of intention not to renew not less than 90 days prior to the expiration of the Initial Term or any Renewal Term.

**3. Rent.** Until the date which is 60 days after the issuance of a building permit, rent will be a one-time aggregate payment of ██████████████████████████████, the receipt of which Owner acknowledges. Thereafter, rent will be paid in equal monthly installments of █████████████ (until increased as set forth herein), partial months to be prorated, in advance. Rent for each Renewal Term will be the annual rent in effect for the final year of the Initial Term or prior Renewal Term, as the case may be, increased by ████████████. Unless SSLP is notified in writing is notified in writing to the contrary rent shall be payable 50% to Lackawanna County Solid Waste Management Authority and 50% to D & L Realty.

**4. Title and Quiet Possession.** Owner represents and agrees (a) that it is the Owner of the Site; (b) that it has the right to enter into this Agreement; (c) that the person signing this Agreement has the authority to sign; (d) that SSLP is entitled to access to the Site at all times and to the quiet possession of the Site throughout the Initial Term and each Renewal Term so long as SSLP is not in default beyond the expiration of any cure period; and (e) that Owner shall not have unsupervised access to the Site or to the PCS equipment.

**5. Assignment/Subletting.** SSLP may assign or transfer this agreement or sublet all or any portion of the site without the prior written consent of owner. In the event SSLP sublets or Co-Locates to a Non-Affiliate for all or a portion of the site, ████████████████ of all Net Sublet proceeds received from such Non-Affiliate will be paid to owner by SSLP within thirty(30) days of actual receipt of a gross Revenue Payment by SSLP. For purposes of this Section 5 the following terms will have the following " means any party other than (i) any party controlling, controlled by, or under common control with SSLP, (ii) any Affiliate party acquiring substantially all of the assets of SSLP, 'Non-Sublet Proceeds" means, with respect to any Gross Revenue Payment, the amount (if any) by which said Gross Revenue Payment exceeds operating Expenses. " Gross Revenue Payment means any sublease or co-location rental payment received by SSLP from a Non- Affiliate. "Operating Expenses" means the following reasonable expenses incurred by SSLP during the period relating to the Gross Revenue Payment and which pertain to the subject sublet or co-location premises: costs incurred under maintenance or service contracts, insurance premiums, real estate and personal property taxes and assessment, utility expenses, legal, accounting and other professional fees, capital expenditures and extraordinary repairs, management fees, and any other customary and reasonable expense related to the ordinary operation of the subject sublet or co-location premises, pro-rated equal among SSLP and each subtenant or co-locator. SSLP shall provide notice of any sublet or co-location of the premises.

**6. Notices.** All notices must be in writing and are effective only when deposited in the U.S. mail, certified and postage prepaid, or when sent via overnight delivery. Notices to SSLP are to be sent to: One International Blvd., Suite 800, Mahwah, NJ 07495; Attn: Property Manager, with a copy to Sprint Spectrum L.P., 4900 Main, Kansas City, MO 64112. Notices to Owner must be sent to the address shown underneath Owner's signature.

**7. Improvements.** SSLP may, at its expense, make such improvements on the Site as it deems necessary from time to time for the operation of the PCS system. Owner agrees to cooperate with SSLP with respect to obtaining any required zoning approvals for the Site and such improvements. Upon termination or expiration of this Agreement, SSLP may remove its equipment and improvements and will restore the Site to substantially the condition existing on the Commencement Date, except for ordinary wear and tear and casualty loss.

**8. Compliance with Laws.** Owner represents that Owner's property (including the Site), and all improvements located thereon, are in substantial compliance with building, life/safety, disability and other laws, codes and regulations of applicable governmental authorities. SSLP will substantially comply with all applicable laws relating to its possession and use of the Site.

**9. Interference.** SSLP will resolve technical interference problems with other equipment located at the Site on the Commencement Date or any equipment that becomes attached to the Site at any future date when SSLP desires to add additional equipment to the Site. Likewise, Owner will not permit or suffer the installation of any future equipment which (a) results in technical interference problems with SSLP's then existing equipment or (b) encroaches onto the Site.

**10. Utilities.** Owner represents that utilities adequate for SSLP's use of the Site are available. SSLP will pay for all utilities used by it at the Site. Owner will cooperate with SSLP in SSLP's efforts to obtain utilities from any location provided by Owner or the servicing utility, including signing any easement or other instrument reasonably required by the utility company.

**11. Termination.** SSLP may terminate this Agreement at any time by notice to Owner without further liability if SSLP does not obtain all permits or other approvals (collectively, "approval") required from any governmental authority or any easements required from any third party to operate the PCS system, or if any such approval is canceled, expires or is withdrawn or terminated, or if Owner fails to have proper ownership of the Site or authority to enter into this Agreement, or if SSLP, for any other reason, in its sole discretion, determines that it will be unable to use the Site. Upon termination, all prepaid rent will be retained by Owner unless such termination is due to Owner's failure of proper ownership or authority, or such termination is a result of Owner's default.

**12. Default.** If either party is in default under this Agreement for a period of (a) 15 days following receipt of notice from the non-defaulting party with respect to a default which may be cured solely by the payment of money, or (b) 30 days following receipt of notice from the non-defaulting party with respect to a default which may not be cured solely by the payment of money, then, in either event, the non-defaulting party may pursue any remedies available to it against the defaulting party under applicable law, including, but not limited to, the right to terminate this Agreement. If the non-monetary default may not reasonably be cured within a 30-day period, this Agreement may not be terminated if the defaulting party commences action to cure the default within such 30-day period and proceeds with due diligence to fully cure the default.

**13. Indemnity.** Owner and SSLP each indemnifies the other against and holds the other harmless from any and all costs (including reasonable attorneys' fees) and claims of liability or loss which arise out of the ownership, use and/or occupancy of the Site by the indemnifying party. This indemnity does not apply to any claims arising from the sole negligence or intentional misconduct of the indemnified party. The indemnity obligations under this Paragraph will survive termination of this Agreement.

**14. Hazardous Substances.** Owner represents that it has no knowledge of any substance, chemical or waste (collectively, "substance") on the Site that is identified as hazardous, toxic or dangerous in any applicable federal, state or local law or regulation. SSLP will not introduce or use any such substance on the Site in violation of any applicable law.

**15. Subordination and Non-Disturbance.** This Agreement is subordinate to any mortgage or deed of trust now of record against the Site. However, promptly after the Agreement is fully executed, Owner will use diligent efforts to obtain a non-disturbance agreement reasonably acceptable to SSLP from the holder of any such mortgage or deed of trust.

**16. Taxes.** SSLP will be responsible for payment of all personal property taxes assessed directly upon and arising solely from its use of the communications facility on the Site. SSLP will pay to Owner any increase in real property taxes attributable solely to any improvements to the Site made by SSLP within 60 days after receipt of satisfactory documentation indicating calculation of SSLP's share of such real estate taxes and payment of the real estate taxes by Owner. Owner will pay when due all other real estate taxes and assessments attributable to the property of Owner of which the Site is a part.

**17. Insurance.** SSLP will procure and maintain commercial general liability insurance, with limits of not less than $1,000,000 combined single limit per occurrence for bodily injury and property damage liability, with a certificate of insurance to be furnished to Owner within 30 days of written request. Such policy will provide that cancellation will not occur without at least 15 days prior written notice to Owner. Each party hereby waives its right of recovery against the other for any loss or damage covered by any insurance policies maintained by the waiving party. Each party will cause each insurance policy obtained by it to provide that the insurance company waives all rights of recovery against the other party in connection with any damage covered by such policy.

**18. Maintenance.** SSLP will be responsible for repairing and maintaining the PCS system and any other improvements installed by SSLP at the Site in a proper operating and reasonably safe condition; provided, however if any such repair or maintenance is required due to the acts of Owner, its agents or employees, Owner shall reimburse SSLP for the reasonable costs incurred by SSLP to restore the damaged areas to the condition which existed immediately prior thereto. Owner will maintain and repair all other portions of the property of which the Site is a part in a proper operating and reasonably safe condition.

**19. Miscellaneous.** (a) This Agreement applies to and binds the heirs, successors, executors, administrators and assigns of the parties to this Agreement; (b) this Agreement is governed by the laws of the state in which the Site is located; (c) if requested by SSLP, Owner agrees promptly to execute and deliver to SSLP a recordable Memorandum of this Agreement in the form of Exhibit B; (d) this Agreement (including the Exhibits) constitutes the entire agreement between the parties and supersedes all prior written and verbal agreements, representations, promises or understandings between the parties. Any amendments to this Agreement must be in writing and executed by both parties; (e) if any provision of this Agreement is invalid or unenforceable with respect to any party, the remainder of this Agreement or the application of such provision to persons other than those as to whom it is held invalid or unenforceable, will not be affected and each other provision of this Agreement will be valid and enforceable to the fullest extent permitted by law; and (f) the prevailing party in any action or proceeding in court or mutually agreed upon arbitration proceeding to enforce the terms of this Agreement is entitled to receive its reasonable attorneys' fees and other reasonable enforcement costs and expenses from the non-prevailing party.

Exhibit "A"

The following Exhibits are attached to and made a part of this Agreement: Exhibit A and B.

**OWNER: LACKAWANNA COUNTY SOLID WASTE MANAGEMENT AUTHORITY**

By: _____
     Chairman

Address: 3400 Boulevard Avenue, Scranton, PA 18509

Date: 10/28/99

**OWNER: D & L REALTY CO.**

By: _____

Name: Dominic DeNaples

Its: Partner

By: _____

Name: Louis DeNaples

Its: Partner

S.S./Tax No.: _____

Address: 400 Mill Street, Dunmore, PA 18512

Date: 10/28/99

**SPRINT SPECTRUM L.P., a Delaware limited partnership**

By: _____

Its: _____

Address: One International Blvd., Suite 800, Mahwah, NJ 07495

Date: 12/2/99

I:\Gdm\Sprint\Recycling Center 33-941B\Recycling Center 941B PCSSite Agreement.wpd
Version Date: September 14, 1999 (12:26PM)

Attach Exhibit A - Site Description and Exhibit B - Memorandum of PCS Site Agreement

Exhibit "A"

Version 3
**EXHIBIT A**
March 97

Site Name: **Recycling Center** _____     **Site Description**     Site I. D.: **NY33XC941C** _____

Site situated in the City Scranton, County of Lackawanna, Commonwealth of Pennsylvania commonly described as follows:

Legal Description: Tax Map # part of 12404-010.005 and all of 12403-040.008

Sketch of Site:



Owner Initials _____
SLP Initials _____

ote: Owner and SSLP may, at SSLP's option, replace this Exhibit with an exhibit setting forth the legal description of the property on which the
te is located and/or an as-built drawing depicting the Site.

Use this Exhibit A for PCS Site Agreement, Memorandum of PCS Site Agreement, Option Agreement and Memorandum of Option Agreement.]

Version 3

**EXHIBIT B**

March 97

Site Name: Recycling Center _____

**PCS Site Agreement**

Site I. D.: NY33XC941C _____

## Memorandum of PCS Site Agreement

—

This memorandum evidences that a lease was made and entered into by written PCS Site Agreement dated _____, 1999, between D & L REALTY CO. ("Owner") and Sprint Spectrum L.P., a Delaware limited partnership ("SSLP"), the terms and conditions of which are incorporated herein by reference

Such Agreement provides in part that Owner leases to SSLP a certain site ("Site") located at 3400 Boulevard, City of Scranton, County of Lackawanna, Commonwealth of Pennsylvania, within the property of Owner which is described in Exhibit A attached hereto, with grant of easement for unrestricted rights of access thereto and to electric and telephone facilities for a term of five (5) years commencing on _____, 1999, which term is subject to four (4) additional five (5) year extension periods by SSLP.

IN WITNESS WHEREOF, the parties have executed this Memorandum as of the day and year first above written.

**"OWNER"**

LACKAWANNA COUNTY SOLID WASTE MANAGEMENT AUTHORITY

By: _____
       Chairman

Address: 3400 Boulevard Avenue, Scranton, PA 18509

D & L REALTY CO.

By: _____

Name: Dominic DeNaples

Title: _____

By: _____

Name: Louis DeNaples

Title: _____

Address: 400 Mill Street, Dunmore, PA 18512

**"SSLP"**

Sprint Spectrum L.P., a Delaware limited partnership

By: _____

Name: **MICHAEL W. LOUCY**

Title: **DIRECTOR-SITE DEVELOPMENT NORTHEAST REGION**

Address:
One International Blvd., Suite 800, Mahwah, NJ 07495

Owner Initials _____

SSLP Initials _____

Exhibit "A"

**OWNER NOTARY BLOCK:**

STATE OF _Pennsylvania_

COUNTY OF _Lackawanna_

The foregoing instrument was acknowledged before me this _25th_ day of _October_, 19 _99_

☐ by _Dominick DeNaples_  ☐ by _Louis DeNaples_ as _owners_

of _D & L Realty Corp_, a _Pennsylvania_ corporation, on behalf of the corporation,

by _____, partner (or agent) on behalf of _____, a partnership.

(AFFIX NOTARIAL SEAL)

_____
(OFFICIAL NOTARY SIGNATURE)

NOTARY PUBLIC—STATE OF _____

My commission expires:
_May 25, 2002_

Notarial Seal
Margaret Mary Piepoli, Notary Public
_____ County
My Commission Expires May 25, 2002
Member, Pennsylvania Association of Notaries

(PRINTED, TYPED OR STAMPED NAME OF NOTARY)
COMMISSION NUMBER: _____


STATE OF _New Jersey_

COUNTY OF _Bergen_

The foregoing instrument was acknowledged before me this _3rd_ day of _December_ 19 _99_

☐ by _MICHAEL W. LOUCY_  ☐ by _____, as _____

of _DIRECTOR-SITE DEVELOPMENT NORTHEAST REGION_ a _____ corporation, on behalf of the corporation,

by _____, partner (or agent) on behalf of _____, a partnership.

(AFFIX NOTARIAL SEAL)

_____
(OFFICIAL NOTARY SIGNATURE)

NOTARY PUBLIC—STATE OF _NJ_

SUSAN M. GRAHAM
NOTARY PUBLIC
STATE OF NEW JERSEY
No. 2188937
Commission Expires May 1, 2001

(PRINTED, TYPED OR STAMPED NAME OF NOTARY)

My commission expires: _May 1, 2001_

COMMISSION NUMBER: _____

WNER NOTARY BLOCK:

TATE OF .......................................................

OUNTY OF .......................................................

he foregoing instrument was acknowledged before me this _28th_ day of _October_, 19_92_

I by _PATRICK J. MCLAINE_ by _____ as _CHAIRMAN_

_L, CSWMA_, a _PA_ corporation, on behalf of the corporation,

Y _____, partner (or agent) on behalf of _____, a partnership.

(AFFIX NOTARIAL SEAL)

My commission expires:

(OFFICIAL NOTARY SIGNATURE)

NOTARY PUBLIC—STATE OF _____

NOTARIAL SEAL
JOHN JOSEPH CRONIN, Notary Public
PA
My Commission Expires Nov. 26, 2001

(PRINTED, TYPED OR STAMPED NAME OF NOTARY

COMMISSION NUMBER:

---

STATE OF .......................................................

COUNTY OF .......................................................

The foregoing instrument was acknowledged before me this _____ day of _____, 19____

☐ by _____ ☐ by _____ as _____

of _____, a _____ corporation, on behalf of the corporation,

by _____, partner (or agent) on behalf of _____, a partnership.

(AFFIX NOTARIAL SEAL)

My commission expires:

(OFFICIAL NOTARY SIGNATURE)

NOTARY PUBLIC—STATE OF _____

(PRINTED, TYPED OR STAMPED NAME OF NOTARY)

COMMISSION NUMBER: _____

Exhibit "A"